**IN THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF ILLINOIS**

**SPRINGFIELD DIVISION – ADAMS COUNTY**

| | | |
|---|---|---|
| APRIL R. BRASHER AND | ) | **The Honorable Judge** |
| RICHARD M. ORENCIA | ) | |
| individually | ) | **Magistrate Judge** |
| and on behalf of all persons | ) | **The Honorable** |
| similarly situated | ) | |
| as collective representative under and/or as | ) | |
| members of the Collective as permitted | ) | **Case No.  17 CV** 3022 |
| under the Fair Labor Standards Act | ) | |
| **Plaintiffs,** | ) | **As Per Local Rule 38.1:** |
| | ) | **Equitable relief is sought** |
| **v.** | ) | **and demand for jury trial.** |
| | ) | |
| Quincy Properties LLC, doing business as | | |
| "Welcome Inn" | | |
| and | | |
| Welcome Inn Hotel Management, Inc. | | |
| and | | |
| BRETT BURGE, | | |
| KENNETH LOGAN, | | |
| QUENTIN KEARNEY, | | |
| JOE WIMBERLY, | | |
| as individuals under FLSA and Illinois Wage | | |
| Laws | | |
| **Defendants.** | | |
| | ) | |

## COMPLAINT

FOR INDIVIDUAL CLAIMS FOR OWED OVERTIME WAGES AND MINIMUM WAGES
FOR THE NAMED PLAINTIFFS
AND
**FLSA COLLECTIVE ALLEGATIONS**

NOW COMES the Plaintiffs, APRIL R. BRASHER AND RICHARD M. ORENCIA,

individually and on behalf of all others similarly situated, as collective representatives, by and

through their undersigned counsel of record, upon personal knowledge as to those allegations in

which they so possess and upon information and belief as to all other matters, pursuant to

§216(b) of the Fair Labor Standards Act (hereinafter "FLSA"), the Illinois Minimum Wage Law

820 ILCS 105/1 *et seq* (hereinafter "IMWL" ) Illinois Wage Payment and Collection Act 820 ILCS 115/1 *et seq.* (West 2002)) (hereinafter "IWPCA" ) and brings this cause of action against Defendant Quincy properties LLC, doing business as (d/b/a) "Welcome Inn"., (hereinafter "Quincy Properties") and

Welcome Inn Hotel Management, Inc. (Hereinafter referred to as WIHM) and BRETT BURGE, KENNETH LOGAN, QUENTIN KEARNEY, and JOE WIMBERLY as individual Defendants under FLSA and Illinois Wage Laws BRETT BURGE, KENNETH LOGAN, QUENTIN KEARNEY, and JOE WIMBERLY  are hereinafter referred to as "Individual Defendants"), and in so doing states the following:

## **NATURE OF THE ACTION**

1.      Plaintiffs bring this action for unpaid overtime, monetary damages, declaratory and injunctive relief and other equitable and ancillary relief, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

2.      Plaintiffs, allege individually and on behalf of themselves and other similarly situated current, former and future mis-classified "salaried" employees of the Defendant, (Hereinafter references to "Plaintiff" are inclusive of both Individual Plaintiffs and those employees that are similarly situated to the Individual Plaintiffs) that they, under both federal and state wage laws, were/are misclassified due to the mis-classified employees lacking "Exempt" duties and/or the "Exempt" Duties (if any)  are overwhelmed by the non-exempt duties and/or lose of Exemption due to deductions from salaries of the employees.

3.      Plaintiff Brasher also brings a claim of wage retaliation, as her termination was the direct result of her complaining about the illegal wage deduction and/or overtime wages Defendants threatened to impose on her, which is illegal to terminate an employee on those complaints under FLSA, IMWL and IWPCA.

4.      Here Defendant Quincy Properties has a policy and procedure of classifying many (most) its employees as being "salaried" despite those most of those employees[1] having few or no actual "salaried" work duties.

<u>Defendants fail in the Primary Duties Test, Thus Losses Salary Exemption for Individual Plaintiffs' and Collective</u>

5.      Plaintiffs plead claims that they and collective members were and are misclassified as "Salaried" and Exempt because Defendants failed to maintain the proper balance of actual work duties/work time in the Primary Duties test.

6.      Thus Plaintiffs are entitled to be paid for all hours worked and to receive minimum wage for all hours worked and/or receive time and half for all hours worked over forty (40) hours per week and more specifically Plaintiff alleges that Defendants fail to pay overtime wages and/or minimum wages under the proper rate of pay by failing to pay overtime rate based on the misclassification of employees as salaried employees.

---

[1] Some Defendant employees are likely properly classified, for example Plaintiff Brasher's General Manager Kristyna Pincova is likely paid via Salary and supervises the Plaintiff and other employees thus the General Manager of the Quincy Welcome Inn is not likely a member of the collective on the basis of job duties, but she could be a member on other methods such as deductions.

7.      Additionally and alternatively, Plaintiffs allege the Defendants' lose their claims of salary exemption via deductions or compelled payments from the "salaries" of alleged "exempt" employees.

8.      The salary deductions from alleged Salaried Employees are in form of direct deductions and compelled payments by Defendants.

<u>Defendant has An Actual Practice of Improper Deductions from Salaries</u>

9.      Defendant has an actual practice of making improper deductions from an employee's salaries and Defendant does not (and did not) reimburse the employee(s) for improper deductions, thus the Defendant loses the exemption status as to that particular employee and subject themselves to liability under the FLSA, including implications with State and Federal overtime requirements.

10.     Further Defendant here has an actual practice of improper deductions from employees salary thus the exemption is lost during the time period of the deductions for employees in the same job classification working for the same managers responsible for the improper deductions.

11.     The loss of exemption by other salaried employees is supported by the US Department of Labor Fact Sheet 17G which reads in part:

    Being paid on a "salary basis" means an employee regularly receives a predetermined amount of compensation each pay period on a weekly, or less frequent, basis. The predetermined amount cannot be reduced because of variations in the quality or quantity of the employee's work. Subject to exceptions listed below, an exempt employee must receive the full salary for any week in which the employee performs any work, regardless of the number of days or hours worked. Exempt employees do not need to be paid for any workweek in which

4

they perform no work. If the employer makes deductions from an employee's predetermined salary, i.e., because of the operating requirements of the business, that employee is not paid on a "salary basis." If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

**Effect of Improper Deductions from Salary**

The employer will lose the exemption if it has an "actual practice" of making improper deductions from salary. Factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting deductions; the time period during which the employer made improper deductions; the number and geographic location of both the employees whose salary was improperly reduced and the managers responsible; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions. **If an "actual practice" is found, the exemption is lost during the time period of the deductions for employees in the same job classification working for the same managers responsible for the improper deductions.** (emphasis added)

12.  Here there are/were a number of "salaried" employees that worked in the same job classification as Plaintiff, at the same location, thus Notice of the FLSA violations should be given to the Collective and those other affected employees should be allowed to join the case.

EMPLOYEE RANDALL'S COMPELLED PAYMENTS

VOID PLAINTIFF'S EXEMPTION

13.  For example Plaintiff Orencia worked as a maintenance employee and a different employee named "Randall" (last name not known) also was a maintenance employee, thus the two employees worked in the same job at the same job location.

14. Further if Randall worked at more than one of the Defendants location, and other persons worked at the same location(s) those other employees are also included in the Collective.

15. Further both Plaintiff and Randall were paid a salary.

16. Randall was compelled to pay for some "work error" for the last six weeks.

17. Defendants claims Randall "owes" approximately $3,0000 to Defendants for a "work error" and Randall must pay the "debt" by a set date or be evicted from his residence at the Hotel/Motel and/or lose his job.

18. Upon information and belief Randall has made regular payments to the Defendants for this alleged "work error". Thus each payment would void the exemption for that pay period.

19. Further, Plaintiff Brasher was threatened with a salary deduction of a one day's pay for an alleged work violation.

20. The mere threat or policy and procedure of salary deductions is sufficient to void claims of Exempt, as salaried employees salary can not be reduced via deductions for work errors or quality or quantity of work.

21. Plaintiff Brasher complained that the deduction was illegal, and Defendants began to harass, harangue and monitor Plaintiff after the complaint, in retaliation for the complaint and violation of FLSA, IMWL and IWPCA wage laws.

22. Ultimately Plaintiff Brasher was terminated for her wage complaint, for a pretextual reason ten (10) days after she complained that the deduction was illegal.

23. As the FLSA requires payment of salary without reduction for quality or quantity of work, any deductions voids the claims of exemption for Plaintiffs and those in the Collective.

24. This action is also brought as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, 207 and 216(b) to recover unpaid overtime wages for similarly situated salaried employees for whom the Defendant's claim of salary exemption is found to be lost.

25. Plaintiffs' federal FLSA claims are brought as "opt-in" collective action claims pursuant to the FLSA.

26. Plaintiffs, in their collective claims, request injunctive and declaratory relief, and compensation and credit for all uncompensated work required, suffered, and/or permitted by Defendant, liquidated and/or other damages as permitted by applicable law, restitution and payment of all benefits Defendant obtained from their unlawful business practices and attorneys' fees and costs.

27. The Court has jurisdiction of the federal claims under 28 U.S.C. §1331 and §1367.

28. As per local rule RULE 40.1 – This matter is founded in Quincy Illinois in Adams County of Illinois, this case is filed and founded in the **SPRINGFIELD DIVISION of this court.**

29. The Court has supplemental jurisdiction over the state law claims.

30. Venue is appropriate under 28 U.S.C. §1391, because Defendant, Quincy Properties LLC. operates in the State of Illinois additionally Plaintiffs Brasher and Orencia live and work in Illinois for Defendant and Plaintiffs (both) live on the property of the Defendant in Illinois.

31. Venue is also appropriate under 28 U.S.C. §1391(b)(2), because a substantial part of the events giving rise to these claims occurred in this District.

## PARTIES

32. Plaintiff APRIL R. BRASHER is a resident of Quincy, Illinois, which is located in Illinois.

33. Plaintiff April R. Brasher resides AT THE HOTEL/MOTEL owned and operated by Defendant.

34. Plaintiff April R. Brasher resides AT THE HOTEL/MOTEL called the "Welcome Inn" located in Quincy Illinois, 62301 (address removed as per local rules for ECF).

35. Plaintiff Richard M. Orencia is a resident of Quincy, Illinois, which is located in Illinois.

36. Plaintiff Richard M. Orencia resides AT THE HOTEL/MOTEL owned and operated by Defendant.

37. Richard M. Orencia resides AT THE HOTEL/MOTEL called the "Welcome Inn" located at Quincy Illinois, 62301 (specific address removed as per local rules for ECF).

38. Quincy Properties is a corporation which operates a motel/hotel in Quincy Illinois called the "Welcome Inn" located in Quincy Illinois, 62301 (address removed as per local rules for ECF).

39. Quincy Properties is a corporation which operates a number of other motels/hotels totaling at least six separate properties.

40. Welcome Inn Hotel Management, Inc. which operates a number of other motels/hotels totaling at least six separate properties, Plaintiff includes these other properties including: Extended Stay Welcome Inn, Holiday, Welcome Inn (Blue Springs MO), Welcome Inn (Benton, Mo), Welcome Inn (Columbia, MO)

41. Welcome Inn Hotel Management, Inc. is also "Doing Business As" (d/b/a): Extended Stay Welcome Inn, Holiday, Welcome Inn (Blue Springs MO), Welcome Inn (Benton, MO), Welcome Inn (Columbia, Mo)

42. Quincy Properties is a corporation which operates a number of motels/hotels which operate as a single entity, thus the Defendants' operations exceed sales of $500,000.00.

43. Defendant Welcome Inn Hotel Management, Inc. and Quincy Properties are joint employers and/or operating under the same management.

44. BRETT BURGE, KENNETH LOGAN, QUENTIN KEARNEY, and JOE WIMBERLY (hereinafter "Individual Defendants") are named as Defendants pursuant to the FLSA, IMWL and IWPCA as these managers/owners were the ultimate decision makers for the various wage violations and retaliations.

45. The Individual Defendants were the owners/managers who decided to or approved of the decision to classify housekeepers (and other persons with no

exempt job duties) as salaried, to pay a salary less than the USDOL minimum salary allowed, to deduct earned wages from salary and/or hourly wages of employees, and ultimately to threaten employment termination for refusal to take an illegal salary deduction and subsequent termination of Plaintiff Brasher for that wage protest.

## JOINT EMPLOYER FACTS

46.   Both Welcome Inn Hotel Management, Inc. and Quincy Properties are in the hotel/motel business, operating hotels/motels.

47.   Plaintiff alleges that the two corporations are Joint-Employers of the Plaintiff and the Collective.

48.   Plaintiff alleges that the Defendants are Joint employers and/or had a joint employment relationship over the Plaintiff and Class. *See* 29 C.F.R. § 791.2.

49.   The Department of Labor regulations provide guidance as to when a joint employer relationship exists:

Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
(1) Where there is an arrangement between the employers to share the employee's services, as for example, to interchange employees; or
(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reasons of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b).

50. Here the Defendants share the employees services, in that both corporations operate under the same management and facilities.

51. Welcome Inn Hotel Management, Inc oversees, directs and supervises all of Plaintiffs and Collective work in conjunction with the supervision of Quincy Properties.

52. Plaintiffs and Collective work and efforts were given for the benefit of both employers.

53. A determination of whether employment by a group of employers is to be considered joint employment or separate and distinct employment for purposes of the FLSA, however, depends upon all the facts in the particular case. 29 C.F.R. § 791.2(a)

54. Joint employment is supported further by the sharing of facilities and other management employees.

55. For example the Manager of the Quincy Illinois location also manages and oversees another location owned and operated by Welcome Inn Hotel Management, Inc.

56. Other employees at the Quincy Illinois location also work at other locations owned and operated by Welcome Inn Hotel Management, Inc.

57. Other employees at the other locations owned and operated by Welcome Inn Hotel Management, Inc also work at the Quincy Illinois location.

58. The Defendants' listings for the listings on the Illinois Secretary of State corporation listings are the same as the Welcome Inn Hotel Management, Inc location.

## GENERAL ALLEGATIONS

<u>Plaintiff Brasher worked as a House Keeper or Maid
Having no "Exempt" Duties
as her Job is/was to Clean Rooms and Do Laundry
yet Defendant Classified Plaintiff Brasher as a "Salaried Employee"</u>

59.    Plaintiff Brasher was employed as a House Keeper at the Welcome Inn.

60.    Plaintiff Brasher's two job duties were as follows:

    a.  Clean Rooms in the Defendants' Motel

    b.  Do Laundry contemporaneously as she cleaned rooms.

61.    These are the only substantial job duties in Plaintiff's job.

62.    Defendants have classified Plaintiff Brasher as "Exempt".

63.    Defendants paid Plaintiff a Salary.

64.    Defendants claim Plaintiff was an Exempt employee.

65.    Defendants paid Plaintiff $700.00 per week since she was hired in October of 2016.

66.    This payment has not varied based on the number of hours Plaintiff has worked.

67.    Plaintiff Brasher's hours have varied week to week, every single week that she worked, and her paid wages were always $700.00.

68.    Defendants were aware or should have been aware that Plaintiff's work hours varied greatly as they saw her working a variety of hours.

69.    Additionally Plaintiff Brasher was allowed to reside in the Hotel/Motel for a value of $150.00 per week (not listed on Plaintiff's Paycheck, but offered via oral agreement). (Defendant will likely claim the value of the room/resident as a set-off which may or may not apply).

## DEFENDANT CLASSIFIED PLAINTIFF BRASHER AS EXEMPT

70. Plaintiff's being classified as "Salary Exemption" is supported by Plaintiff's Brasher's pay checks list her as having a "Salary".

71. Plaintiff's being classified as "Salary Exemption" is supported by Plaintiff's Brasher's pay checks have an entry for "Total Hours" and "Total Hours Worked" but neither entries has any time entry on any of her paychecks for the number of hours worked.

72. Plaintiff worked as a housekeeper over 40 hours a week, every week she has worked for Defendant since October of 2016.

## PLAINTIFF BRASHER'S "EXEMPT" JOB DUTIES ARE NON-EXISTENT, THUS THE PLAINTIFF WAS MISCLASSIFIED AS SALARIED AND IS OWED OVERTIME AND MINIMUM WAGES

73. Additionally or alternatively, Plaintiff also brings claims that she was misclassified because Defendant failed to maintain the proper balance of exempt and non-exempt job duties in the Primary Duties test.

74. As discussed above, Plaintiff had only two job duties for Defendants: cleaning and laundry.

75. Plaintiff did not supervise any employee.

76. Plaintiff did not hire, fire or discipline any employee nor did Plaintiff have any such authority.

77.    Plaintiff did not have any participation in the hiring, firing or discipline of any employee, including Plaintiff did not provide any recommendations on hiring firing or disciplining of any employee nor did Plaintiff have any such authority.

78.    Plaintiff did not have any authority into any areas of substantial concern or economic value, which would be covered by the Administrative Exemption.

79.    Plaintiff's primary duty was not the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

80.    Plaintiff's primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance.

81.    Plaintiff did not engage in any other salary classification work such as artistic, medical, or legal work.

82.    To maintain the proper classification under the salary exemption regulations the Defendant must ensure that Plaintiff's exempt work was her "primary duty".

83.    Here Plaintiff's primary duty (only duty) was that of being a House-Keeper, not as an exempt position. Thus Defendant losses the claims of Plaintiff Brasher being Exempt due to failure of Defendant to maintain Plaintiff's salaried work as her "primary duty", as Plaintiff had NO exempt work.

84.    This action is brought to recover unpaid overtime compensation, minimum wages, liquidated damages, unlawfully withheld wages, statutory penalties and damages owed to Plaintiff.

85.    During the statutory period, Plaintiff routinely worked in excess of forty (40) hours per week without overtime compensation.

86. These practices violate the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. §201 *et seq.,* specifically § 207(a)(1). As a result of this unlawful practice, Plaintiff suffered a loss of wages.

## PLAINTIFF BRASHER WORK HOURS AND OVERTIME HOURS AND MINIMUM WAGE CLAIMS

87. Defendant failed to pay overtime wages and other benefits to Plaintiff during her employment by misclassifying her. For example, Plaintiff routinely worked 10, 12, 14 hour days, but was only paid for 8 hour days.

88. Plaintiff also worked on occasion astoundingly long shifts, over 24 hours, sometimes as much an 36 hours in a two day period, working from 800 AM one day until 800 PM the next day straight through with few short breaks.

89. Despite working these extra ordinary long shifts, Plaintiff also was required and expected to also work the other four days in her six day work week in addition to the 20/24/36 hour work shift.

90. Thus during these occasional work weeks Plaintiff would work over 80 hours in a single week and yet was only paid for 40 hours of work.

## PLAINTIFF AND COLLECTIVE WERE NOT PAID MINIMUM WAGES IN THEIR "TRAINING" PERIOD

91. Plaintiff Brasher also presents claims that she and other collective members were not paid minimum wages during their "training" period.

92. Plaintiff began working for Defendant in October of 2016.

93. Plaintiff was told by the motel's General Manager that Plaintiff would be "training" for the first three days of work.

94.     Plaintiff was also told by the General Manager that Plaintiff would not be paid wages for those first two days of work because she was "training".

95.     Plaintiff worked those two unpaid training days despite working full days from 800 AM to 500 PM or 530 PM each day.

96.     Defendants pay periods run from Fridays to Thursdays.

97.     Plaintiff Brasher's two day "training" were her first Wednesday and Thursday of her first week "training".

98.     For those two days of work, Wednesday and Thursday, she received no wages despite working 16 hours total and despite only doing her two work duties of cleaning rooms and doing laundry.

99.     Thus Plaintiff is owed at her regular rate of pay, or at least at minimum wage for those 16 hours of work.

100.    The following pay week, which began on the next week, on the Friday, she also "trained" but was paid a salary.

101.    Not that training is normally unpaid in a non-skilled profession like housekeeping, Plaintiff did not need training even as a housekeeper.

102.    Plaintiff had worked in this field of work (cleaning) for years and the training provided no transferable skill, thus Defendant received the entirety of the benefit of the Plaintiff's work for no pay and the Plaintiff received little to no benefit from the "training" and absolutely no pay.

103.    As per FLSA, IWML and IWPCA regulations and statutes training must be paid.

**PLAINTIFF ORENCIA CLAIMS FOR MIS-CLASSIFICATION-**

**OVERTIME WAGES AND MINIMUM WAGES ALSO DUE TO**

**PLAINTIFF VIA THE MISCLASSIFICATION**

104.    Like Plaintiff Brasher, Plaintiff Orencia is/was classified as "salaried" or "Exempt" employee.

105.    The classification of Plaintiff Orencia as a salaried employee is similar to that of Plaintiff Brasher.

106.    Plaintiff Orencia's being classified as "Salary Exemption" is supported by Plaintiff's Orencia's pay checks list wages as a "Salary".

107.    Plaintiff Orencia's being classified as "Salary Exemption" is supported by Plaintiff's pay checks have an entry for "Total Hours" and "Total Hours Worked" but neither entries has any time entry on any of his paychecks for the number of hours worked.

108.    Plaintiff Orencia has had multiple Job Duties/positions, yet none of those job duties qualifies Plaintiff for a salaried/exempt position, and/or the few exempt duties are overwhelmed by the vastly larger number of hours in which Plaintiff job duties were non-exempt.

109.    Plaintiff Orencia has had at least two and perhaps more job positions or sub-jobs.

110.    Plaintiff Orencia initially was hired as a housekeeper, like Plaintiff Brasher.

111.    Plaintiff Orencia's initial job duties were to simply clean rooms and do laundry.

112.    However Plaintiff Orencia had additional job duties such as working as a maintenance person, quasi-security, and working the front desk. (Plaintiff Orencia hereinafter refers to this initial "blended" position as "Orencia's first job")

113. In Orencia's first job the majority of the work hours were in the area of housekeeping, the other listed duties were less than 50% of the work hours/time Plaintiff worked in that first job.

**PLAINTIFF ORENCIA'S "EXEMPT" JOB DUTIES ARE NON-EXISTENT, THUS THE PLAINTIFF WAS MISCLASSIFIED AS SALARIED AND IS OWED OVERTIME AND MINIMUM WAGES**

114. Plaintiff Orencia also brings claims that he was misclassified because Defendant failed to maintain the proper balance of exempt and non-exempt work/work time in the Primary Duties test.

115. As discussed above, Plaintiff had only many job duties for Defendant which were predominated in two non-exempt areas: cleaning and laundry.

116. Plaintiff did not supervise any employee, nor have such authority.

117. Plaintiff did not hire, fire or discipline any employee nor have such authority.

118. Plaintiff did not have any participation in the hiring, firing or discipline of any employee, including not providing any recommendations on hiring firing or discipline of any employee nor have such authority.

119. Plaintiff did not have any authority into any areas of substantial concern or economic value, which would be covered by the Administrative Exemption.

120. Plaintiff's primary duty was not the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers.

121. Plaintiff's primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance.

122. While Plaintiff did some work as a desk clerk, (registering arriving guests, assigns rooms, and checks out guests at the end of their stay), according the USDOL such workers are primarily perform clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work are usually not exempt under the Regulations, Part 541

123. Further the Plaintiff did clerking only a fraction of his work hours in his first job.

124. Plaintiff did not engage in any other salary classification work such as artistic, medical, or legal work.

125. To maintain the proper classification under the salary exemption regulations the Defendant must ensure that Plaintiff's exempt work was his "primary duty".

126. Here Plaintiff's primary duty was that of being a House-Keeper not as an exempt position, thus Defendant loses the claims of being Exempt due to failure of Defendant to maintain Plaintiff's salaried work as his "primary duty", as Plaintiff had NO exempt work.

127. This action is brought to recover unpaid overtime compensation, minimum wages, liquidated damages, unlawfully withheld wages, statutory penalties and damages owed to Plaintiff.

128. During the statutory period, Plaintiff routinely worked in excess of forty (40) hours per week without overtime compensation.

129. These practices violate the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. §201 *et seq.,* specifically § 207(a)(1). As a result of this unlawful practice, Plaintiff suffered a loss of wages.

## PLAINTIFF WORK HOURS AND OVERTIME HOURS AND MINIMUM WAGE CLAIMS

130.    Defendants failed to pay overtime wages and other benefits to Plaintiff during his employment by misclassification. For example, Plaintiff routinely worked 10, 12, 14 hour days, but was only paid for 8 hour days.

131.    In the Plaintiff's first job Defendants paid Plaintiff $800.00 per week in this first job from September 2016 until October of 2016.

132.    Additionally Plaintiff was allowed to reside in the Hotel/Motel for a value of $150.00 per week (not listed on Plaintiff's Paycheck, but offered via oral agreement). (Defendant will likely claim the value of the room/resident as a set-off which may or may not apply).

## PLAINTIFF ORENCIA'S SECOND JOB

133.    In October of 2016 Plaintiff Orencia was removed from his "first job" but was retained as an employee by Defendant to do other work for Defendant.

134.    In Plaintiff Orencia's second job, (hereinafter referred to as "second job"), the Plaintiff was removed from room cleaning, and laundry duties, but retained the other work duties of front desk work, security and maintenance.

135.    Plaintiff was working less hours, but still working over 40 hours a week, thus Plaintiff is owed overtime and/or minimum wages in his second job for Defendants.

136.    Plaintiff's "salary" was also reduced.

137. Plaintiff Orencia's second job salary was now a mere $150.00 and $150.00 for the value of his residence (also not listed on the paycheck).

138. Thus the effective wages paid to Plaintiff Orencia was only $300 per week (IF Defendant prevails on its claims of set off for the value of the room).

139. Plaintiff was paid this $150/$300 salary from October to present. (other than one week receiving $390 check for check dated 10/21/16)

140. For the present position of Plaintiff Orencia, the Plaintiff is clearly misclassified as Plaintiff was not paid the required minimum salary required for salary classification.

141. As per DOL regulations, salaried employees must be paid at least $455 per week, and Plaintiff was paid far less than $455.

142. To qualify for most if not all salaried positions under the FLSA and IMWL the employee must be compensated on a salary or fee basis (as defined in the regulations) at a rate not less than $455 per week.

143. Additionally in the Plaintiff's second job with the Defendant Plaintiff again had little to not actual exempt job duties as alleged above.

144. Further as alleged above, the Plaintiff also claims misclassification via deductions to the salary of Randall and other employees.

**The FLSA Collective Action**

145. Plaintiffs bring claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA (29 U.S.C. § 216(b)), on behalf of all misclassified "salaried" employees of Defendant who were, are, or will be employed by Defendant during the period of three (3) years prior to the date of commencement of this action through the date of judgment in this action,

    a. who were had improper salary deductions and who were not compensated at one-and-one-half times the regular rate of pay for all work performed in excess of forty (40) hours per work week and/or

    b. who were in the same job as Plaintiff Brasher (housekeeper),

    c. who were classified as "salaried" or "exempt" and whose job duties included insufficient "exempt" work time/hours to maintain the exemption.

    d. Who were not paid for training time

    e. Who were not paid the FLSA minimum for a salary.

146. FLSA violation claims are brought and maintained as an "opt-in" collective action pursuant to § 16(b) of FLSA, 29 U.S.C. § 216(b), for all FLSA claims asserted by the Plaintiffs, since the FLSA claims of the Plaintiffs are similar to the FLSA claims for all salaried employees employed by Defendants.

147. Defendant is liable for improperly compensating Plaintiffs and FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are numerous similarly situated current and former employees of Defendant who have been denied proper payment of the overtime wages. These current, former and future employees would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The

similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## COUNT I

### FAIR LABOR STANDARDS ACTION, 29 U.S.C. § 201 ET SEQ.,

### UNPAID WAGES/OVERTIME/MINIMUM WAGE/MISCLASSIFICATION

**And COLLECTIVE ACTION**
**On Behalf of Named Plaintiffs and All Opt-In Employees Against Defendants**
**As a Collective Action**
**(FLSA Claims, 29 U.S.C. § 201 et seq.)**

148.   Plaintiffs repeat and re-allege all paragraphs of that complaint as though fully set forth herein.

149.   The Fair Labor Standards Act, 29 U.S.C. §207(a)(1), states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.  Here Plaintiffs and Collective regularly worked more than 40 hours per week, but were not paid overtime. Defendants failed to pay overtime wages and other benefits to Plaintiffs and Collective by improperly taking salary deductions and/or failing to maintain salaried work as the "primary duty" for Plaintiffs and Collective and/or paid less than the required minimum salary and/or did not pay for training time.

150.   Defendant's actions were willful.  Defendants deliberately paid Plaintiffs and Collective as exempt employees, knowing or should have known of the improper salary deductions and/or failing to maintain salaried work as the "primary duty"

for Plaintiffs and Collective and/or paid less than the required minimum salary and/or did not pay for training time.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the FLSA Collective, pray for the following relief:

A. That, at the earliest possible time, the Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, been employed by the Defendants as salaried employees at any of the Defendants' locations. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join in this lawsuit if they believe they were not similarly situated to the Plaintiffs.

B. Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 et seq. and United States Department of Labor regulations;

C. Certification of this case as a Collective action;

D. Designation of the Plaintiffs as representatives of the Collective, and counsel of record as Class/Collective Counsel;

E. Attorneys' fees and costs of this action in accordance with FLSA and Illinois Wage Laws; and

F. Consequential damages;

G. and costs of this action; and

24

H.     Such other relief as this Court shall deem just and proper.

## COUNT II

### FOR INDIVIDUAL PLAINTIFFS (not as a class or collective)
### FAILURE TO PAY OVERTIME UNDER ILLINOIS LAW MINIMUM WAGE AND OVERTIME WAGE LAWS/ MISCLASSIFICATION

151.   Plaintiffs repeat and re-allege the above paragraphs and incorporate all facts contained in this complaint in this count.

152.   Illinois law provides that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay for all hours worked in excess of forty per week. Illinois Minimum Wage Law, 820 ILCS §105/4a *et. seq.*

153.   Defendant failed to pay Plaintiff for overtime hours worked.

154.   The foregoing actions of Defendant constitute violations of the Illinois Minimum Wage Law, 820 ILCS §105 *et. seq.*   Defendants' actions were willful and not in good faith.

155.   Defendants are liable to Plaintiffs for actual damages, equitable relief, recovery of attorneys' fees and costs, and prejudgment interest as provided by law, pursuant to the Illinois Minimum Wage Law, 820 ILCS §105 *et. seq.*

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, by their attorney, demands judgment against the Defendant and in favor of the Plaintiff for a sum that will properly, adequately and completely compensate Plaintiff for the nature, extent and duration of her damages, the costs of this action and as follows:

A.  Declare and find that the Defendants committed one or more of the following acts:

   i.  Violated overtime and/or minimum wage provisions of the IMWLby failing to pay overtime wages to Plaintiffs;

25

ii Willfully violated overtime provisions of the IMWL;

iii. Made or threatened to make Improper Deductions from the Plaintiff's Salary.

B. Award compensatory damages, including all overtime pay and minimum wages owed, in an amount according to proof;

C. Award of penalties under the IMWL in the amount of 2% of the underpayment for each month the underpayment continues to be unpaid.

D. Order the disgorgement of all monies improperly retained or obtained by Defendant;

E. Enter an order declaring that Defendant willfully violated the overtime provisions of the IMWL;

F. Award Plaintiff damages in the amount of overtime wages required by the IMWL improperly denied them by Defendant's actions;

G. Award all costs and attorney's fees incurred prosecuting this claim;

H. Give leave to amend to add claims under applicable state and federal laws;

I. Give leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and,

J. For such further relief as the Court deems just and equitable.

## COUNT III
## RETALIATION CLAIM
### FLSA Retaliation Claim
#### By Plaintiff Brasher against all Defendants

156. Plaintiff Brasher repeats and re-alleges the above paragraphs and all paragraphs in this complaint.

157. Plaintiff was an employee of Defendants beginning in October of 2016

158. Plaintiff did exceptional work for Defendant at all times Plaintiff worked for Defendants.

159. Plaintiff's exceptional work is shown by Plaintiff having received no written employment discipline from October to January 15, 2016.

160. On January 15, 2017 Plaintiff went to lunch as was allowed and permitted under the rules Plaintiff had been told to follow.

161. On January 16, 2016 Defendants attempted to deduct from Plaintiff's "salary" one day's pay or be terminated.

162. The "deduction or termination" notice was presented to the Plaintiff by the Defendants' General Manager.

163. The Plaintiff Brasher stated in protest: "I refuse to allow deduction for money that I earned already, the decision is yours."

164. The General Manager called corporation manager or owners on the decision, while the Plaintiff was told to go to lunch.

165. The Plaintiff was again told to return back to the office, and told the decisioin had been made to fire her rather as she would not agree to the salary deduction/docking.

166. Later that night the Regional Manager Mary G. (last name not known) called Plaintiff to ask what happened.

167. The Plaintiff explained and Mary G. said: "That is not the story I got, but we are going to stay with termination"

168. Plaintiff stated in response "You are going to allow the General Manager to break the law in giving choice of "termination or deduction" and the Manager's going to get away with that"?

169. Mary G. stated that she would call the Plaintiff back.

170. Mary G. called Plaintiff back stating you are not going to be terminated, you can keep your job.

171. The next day Plaintiff received a set of rules in writing and was told she had to sign the form.

172. Defendants placed this discipline and threat of docking Plaintiff's salary in a written discipline dated January 16, 2016 and written by Plaintiff's Manager Kristyna Pincova.

173. Plaintiff's alleged work violation causing the threat of a lost day's pay was Plaintiff "left work without telling GM".

174. Plaintiff had left work, however, Plaintiff was on her lunch break, thus was allowed to leave work and Plaintiff had never been told that she was required to ask permission.

175. Plaintiff protested the deduction stating the deduction was illegal and not permitted under the law.

176. This protest and wage complaint caused the Defendants to become angry at Plaintiff's wage complaints.

177. Defendants issued a set of rules immediately after the protest, including requiring checking in and out at the front desk, as well as a "schedule" for six days of work beginning at 8:00 AM Monday-Saturday and "ending" at 6:00 PM, or scheduled for 60 hours a week.

178. On January 20, 2017 Plaintiff learned that another person had been offered Plaintiff's job, if that other person could find a reason to get Plaintiff fired.

179. This rumor of replacement was also proved to be true, as Plaintiff's replacement had been training at another hotel for several days prior to January 26, 2017.

180. On January 22, 2017 Plaintiff was in a horrific head-on car accident, but despite the flipping of the car, and despite severe damage to the car cabin and the crumpling of the entire car hood Plaintiff was not hospitalized over night, but suffered severe lacerations to her arms and other painful injuries.

181. Despite having suffered these painful injury on January 22, 2017, Plaintiff worked a full day on January 23, 2017, the very next day, demonstrating the Plaintiff's work ethic, commitment and good work.

182. Despite showing her good work, three days later, on January 26, 2017 Plaintiff was terminated for her wage complaints.

183. Plaintiff was terminated on January 26, 2017 just ten days after complaining about the illegal salary docking and/or the wage deduction, Plaintiff was fired for that wage complaint.

184. Plaintiff complained of the docking/deduction on January 16, 2017 and was fired on January 26, 2017.

185. The delay was also likely due to a on-site inspection by officials from a lending institution which was considering lending money to the hotel.

186. The inspection by the lending institution took place on January 26, 2017 ending in the early afternoon, and Plaintiff was fired around 430 PM.

187. Defendants' hostile reaction to the wage complaint is more understandable, as Defendant has a policy and practice of hiring persons of very limited financial means, persons "down-on-their-luck", and persons with no place to go, thus this pool of disadvantaged persons is much more passive than most other work forces,

thus Plaintiff's wage complaint stands out as being different, but still a protected act.

188. Defendant also requires many of its employees, including both of the Plaintiffs, to live on site of the hotels, thus making the employees further beholden to the Defendant and much less likely to complain.

189. After Plaintiff's wage complaint, the Defendants retracted the intended wage deduction/docking, but Defendants began to monitor Plaintiff and her work, which Defendants had not done with close scrutiny prior to the wage complaint.

190. This new and extraordinary scrutiny is demonstrated by a second written discipline received shortly after the wage complaint, Plaintiff was disciplined for arriving five (5) minutes late, at 8:05 AM on January 18, 2017.

191. Plaintiff previously (before the wage complaint) had been "late" on other occasions and Plaintiff was not disciplined nor was the arrival time even considered a problem.

192. Further evidence of pretext is shown by the Defendants proffered (but unwritten) reason for the termination, that Plaintiff had a criminal Felony Conviction TEN (10) years prior.

193. The pretext is shown by the Defendants being fully aware of Plaintiff's prior felony conviction, hiring her despite that conviction, and allowing her to work from October 2016 to January 26, 2017 with that conviction.

194. Further pretext is shown as Plaintiff did not authorize in writing the criminal background check.

195. The Fair Credit Reporting Act (FCRA) imposes obligations on employers who request criminal background checks.

196. Employers must:

- Get the applicants written consent ahead of time.

- Tell the applicant if the employer intends to disqualify him or her based on the contents of the report.

- The employer must also give the applicant a copy of the report.

197. Here Defendant failed to do any of these required duties under the FRCA, thus showing again that the Employer was acting in bad faith in retaliating against Plaintiff.

198. Pretext is further shown as many of the Defendants employees have criminal records just like the Plaintiff and those employees are not terminated for those criminal records.

199. It is also likely that other employees have criminal records which are more recent (less than ten years old) and more sever criminal actions than the Plaintiff's.

200. Defendant's retaliation also continues/continued after the Plaintiffs' termination, as she was ordered to vacate her residence at the hotel/motel within three (3) days of the termination, Plaintiff was not even offered to be allowed to stay, which is offered to other ex-employees.

201. Further, if Plaintiff did not vacate the premises within three days, Plaintiff would be charged $65.00 for staying at the hotel/motel for those three days.

202. Further if Plaintiff did not vacate the premises, Defendants increased the room rate from $150 per week to $65.00 per day, effectively evicting the Plaintiff.

203. Thus the week rate for ANYONE else would be $150.00 while Plaintiff's weekly rate would be $455.00 per week, again this is a retaliation and an attempt to force Plaintiff to vacate the property.

204. Thus because the Plaintiff complained about her wages, Defendant increased the rent she would have to pay by over 300%.

205. The forced eviction will and has caused Plaintiff additional costs, and expenses due to being forced to move on short notice, and likely not receive a comparable rental situation.

206. The termination and forced eviction in retaliation for Plaintiff's wage complaints also caused Plaintiff additional emotional distress and embarrassment

207. Thus the reasons offered to justify the termination were clearly pre-textual and the real reason for Plaintiff's termination was asking for her wages pursuant to the FLSA.

208. Plaintiff has suffered and will continue to suffer damages as a result of the termination of the Plaintiff.

209. Defendant's retaliations were all based on Plaintiffs requests for payment of overtime wages and/or protesting the illegal deductions from the Plaintiffs wages/salary.

## DEDUCTIONS FROM PAY ARE PROHIBITED REGARDLESS OF THE CLASSIFICATION

210. If Plaintiff is found to be misclassified, thus should be paid hourly, the threatened deductions were illegal: Employers must pay all statutorily-required minimum wage and overtime premium finally and unconditionally, or "free and clear." 29 C.F.R. § 531.35

211. The wage requirements of the Act will not be met where the employee ``kicks-back'' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the ``kick-back'' is made in cash or in other than cash. Sec. 531.32(c)

212. Likewise if the Plaintiff is found to be a properly exempt and salaried employee, the deduction would have made her an hourly employee (at least for that pay period), thus the deduction was/is illegal and prohibited:

213. US Department of Labor Fact Sheet 17G which reads in part:

Being paid on a "salary basis" means an employee regularly receives a predetermined amount of compensation each pay period on a weekly, or less frequent, basis. The predetermined amount cannot be reduced because of variations in the quality or quantity of the employee's work. Subject to exceptions listed below, an exempt employee must receive the full salary for any week in which the employee performs any work, regardless of the number of days or hours worked. Exempt employees do not need to be paid for any workweek in which they perform no work. If the employer makes deductions from an employee's predetermined salary, i.e., because of the operating requirements of the business, that employee is not paid on a "salary basis." If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.

**Effect of Improper Deductions from Salary**
The employer will lose the exemption if it has an "actual practice" of making improper deductions from salary. Factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are

not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting deductions; the time period during which the employer made improper deductions; the number and geographic location of both the employees whose salary was improperly reduced and the managers responsible; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions. **If an "actual practice" is found, the exemption is lost during the time period of the deductions for employees in the same job classification working for the same managers responsible for the improper deductions.** (emphasis added)

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brasher, individually, pray for the following relief:

A.     All owed wages;

B.     All wages and commissions that would have been earned, but for the retaliations, failures to promote, failures to schedule.

C.     All compensatory and/or consequential damages.

D.     Liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting United States Department of Labor regulations;

E.     Unpaid regular wages, and overtime wages pursuant to the IMWL and other state wage laws;

F.     Compensation originating from Defendant's company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

G.     An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

H.     Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq.* and supporting Illinois Department of Labor regulations and other state wage laws;

I.     Attorneys' fees and costs of this action; and

J.     Such other relief as this Court shall deem just and proper.

K.     Legal or equitable relief as may be appropriate to **e**ffectuate the purposes of section 215(a)(3) of the FLSA, including without limitation employment, reinstatement, promotion, the payment of wages lost and an additional equal amount as liquidated damages, and damages for mental and emotional stress.

L.     Civil remedies include all unpaid compensation, mandatory liquidated damages (equal to the amount of the unpaid compensation) equitable relief (such as reinstatement) and attorneys' fees. 29 U.S.C. § 216(b).

M.     Punitive damages as set forth at 29 U.S.C. § 216(b) and allows "such legal or equitable relief as may be appropriate to effectuate the purposes of [the Act] ...."

## COUNT IV

### Retaliatory Termination Claims brought under
### Under Illinois Wage Payment and Collection Act "IWPCA"

214.   Plaintiff realleges and incorporate by reference all the paragraphs in this complaint, as if fully set forth herein.

215.   Plaintiff was employed by Defendant.

216. Plaintiff was terminated from her employment with Defendants based on her complaints against the compelled payments or wage deductions; as alleged in detail in prior paragraphs of this complaint.

217. Plaintiff's wages are not subject to deductions under Illinois Wage Payment and Collection Act (IWPCA)(nor can Defendants require its employees to pay for business expenses) as only certain deductions are allowed under Illinois law. Deductions may be made when: (1) required by law (such as taxes); (2) to the benefit of the employee (such as health insurance premiums, union dues etc.); (3) a valid wage assignment or wage deduction order is in effect; (4) made with the express written consent of the employee, given freely at the time the deduction is made. 820 ILCS 115/9. The threatened deduction of wages for Plaintiff was not 1) express, 2) given freely and 3) at the time of the deduction.

218. Further under IWPCA it is illegal to terminate an employee for expressing her rights under the IWPCA, even if she does not use that language or uses the term IWPCA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Brasher individually, pray for the following relief:

a)     Plaintiff asks the Court enter a finding that Employer violated the IWPCA;

b)     Claimant asks for payment of all wages and/or hours that Plaintiff would have received but for the termination of Plaintiff's employment;

c)     Plaintiff asks for consequential damages, such as additional costs related to the Plaintiff's eviction from her residence at the Defendants' motel/hotel.

d)      Claimant asks for payment of two percent (2%)interest penalty of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid;

e)      Payment of Plaintiff's Attorney Fees;

f)      Payment of Plaintiff's costs of this action;

g)      Any and all other relief as the Court finds to promote justice and equity in this matter.

## JURY DEMAND

Plaintiff demands trial by jury as to all issues triable by jury.

Dated: January 27, 2017                                Respectfully Submitted


/s/John C. Ireland_____
                Attorney for the Plaintiffs and FLSA Collective

John C. Ireland
**Lead counsel for purposes of  RULE 11.2 DESIGNATION OF LEAD COUNSEL ON INITIAL PLEADING**
The Law Office of John C. Ireland
636 Spruce Street
South Elgin ILL 60177
630-464-9675
Fax 630-206-0889
attorneyireland@gmail.com