E-FILED
Friday, 29 September, 2017  03:21:13 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| APRIL R. BRASHIER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 17-cv-3022 |
| | ) | |
| QUINCYPROPERTY, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Plaintiffs' Motion for Protective Order (d/e 96) (Motion 96).  In response, Defendant American Motels, LLC asks for expedited discovery and an evidentiary hearing on the Motion. Response of American Motels, LLC to Plaintiffs' Motion for a Protective Order and request for Evidentiary Hearing and Expedited Discovery (d/e 105) (Response).  Welcome Inn Hotel Management, Inc. (Management) moves to join American's Response.  Defendant Welcome Inn Hotel Management, Inc.'s Motion to Join Defendant American Motels LLC's Response to Plaintiffs' Motion for a Protective Order and Request for Evidentiary Hearing and Expedited Discovery (d/e 106) (Motion 106). Management's Motion 106 is DENIED as moot.  Management is no longer a defendant in this case.  Plaintiff alleged no claims against Management in

the Third Amended Complaint (d/e 94).  The request for expedited discovery and an evidentiary hearing is DENIED.  The parties have thoroughly addressed the issues and provided sufficient information to resolve Motion 96.

For the reasons set forth below, Motion 96 is ALLOWED in part and DENIED in part.  The Court: (1) directs the parties to send a corrective notice in the form set forth in this Opinion to employees whom Defendants Kenneth Logan and Quentin Kearney interviewed regarding this case (Interviewed Employees); and (2) directs the Defendants to: (a) make certain disclosures in any future communications or contacts related to this action with current, former, or prospective employees; and (b) cease asking current, former, or prospective employees to sign preprinted "fill-in-the-blank" form declarations, affidavits, or other sworn or unsworn statements of facts based on personal knowledge related to this case.  The Court will assess the costs of production and distribution of the corrective notice after the District Court resolves the pending motions to dismiss or transfer venue (d/e 98, 100, 102).  Motion 96 is otherwise denied.

## BACKGROUND

Plaintiffs April R. Brashier, Richard M. Orencia, and Chad O. Lebow filed this action on January 28, 2017.[1]  Plaintiffs allege that they worked in the Defendants' hotels.  Plaintiffs allege that the Defendants illegally failed to pay Plaintiffs overtime due and owing under the Fair Labor Standards Act (FLSA).  29 U.S.C. § 201 et seq.  The Plaintiffs contend that the Defendants misclassified the Plaintiffs as salaried employees exempt from the FLSA overtime requirements.  Plaintiffs also allege that Defendants illegally deducted amounts from employees pay in violation of the FLSA.  Plaintiff Brashier further alleges that Defendants retaliated against her by terminating her because she complained about a lack of overtime pay and/or threatened illegal wage deductions.

Plaintiff Lebow alleges Defendants retaliated against him by reducing his wages and/or strictly scrutinizing his work because he requested overtime pay.  Third Amended Complaint, ¶¶ 2-4.  The Plaintiffs bring claims under the FLSA, the Illinois Minimum Wage Law (IMWL), 830 ILCS

---

[1] Some of the documents filed by Plaintiffs spell Plaintiff April Brashier's last name as "Brasher."  See e.g., Complaint (d/e1), Amended Complaint (d/e 4), Second Amended Complaint (d/e 16).  The Third Amended Complaint (d/e 94) spells her name Brashier.  Her name is spelled "Brasher" in Motion 96.  She spelled her name "Brashier" on her Consent to become a FLSA Party attached to the Complaint.  The Court spells her name "Brashier."

105/1 et seq., and the Illinois Wage Payment and Collections Act (IWPCA), 820 ILCS 115/1 et seq.

Plaintiffs have moved for certification of a collective action for all similarly situated employees and former employees.  Plaintiffs' Motion for Certification of Collective Action, for Disclosure of Potential Opt-In Plaintiffs' Contact Information and Court-Approved Notice (d/e 5) and Plaintiffs' Motion for Certification of Collective Action, For Disclosure of Potential Opt-In Plaintiff's Contact Information and Court-Approved Notice (d/e 82) (collectively Motion 5).  Motion 5 is pending.

Upon receipt of the Plaintiffs' Complaint, Defendants Logan and Kearney interviewed several employees of one or more of the Defendants. Logan and Kearney held equity interests in Defendants Quincy Property, LLC, Vandiver Motel, Jefferson Property, County Line Properties LLC, and Springfield Welcome Inn.  Logan and Kearney both held the position of manager with these Defendant entities.  Logan stated that he and Kearney interviewed employees "to determine whether there was any merit to the Plaintiffs' allegations, and whether additional compensation might be owed to any of the Defendants."  Response, Exhibit A, Declaration of Kenneth Logan (Logan Declaration) ¶¶ 2-4; and Exhibit B, Declaration of Quentin Kearney (Kearney Declaration) ¶ 2.

Logan and Kearney brought to each of these interviews a draft declaration form prepared by Defendants' counsel.  Logan Declaration ¶ 6; Response, Exhibit C, Declaration Form (Form).  The Form had the caption of this case at the top.  The title of the Form was "Declaration of _____."  (The blank was to be filled in with the employee's name.)  The first paragraph of the Form stated:

> 1.  I have been interviewed regarding this Declaration and I choose to complete it without threat or coercion or retaliation. I understand that I am free to decline to complete this Declaration and my decision to decline cannot be used against me or negatively impact my rights or my employment.

Form ¶ 1.  The next five paragraphs had several blanks for the employee's place of residence, the name of Defendant entity that employed the employee, the dates of employment, and the location where the employee worked.  Form ¶¶ 2-5.[2]  The last seven paragraphs of the Form were as follows:

> 6.  I have (sic) a (circle one) salaried/hourly employee of _____.
>
> 7.  I work _____hours per week_____.
>
> 8.  My work for _____ has included overtime for which I have been paid time and a half.

---

[2] The Form has two paragraphs numbered 2.

9.      _____is my supervisor at _____ location

10.     I am not owed any compensation for hours worked at any property owned or operated by _____.

11.     No deductions have ever been improperly taken out of my salary, including any deductions for errors committed during work.

12.     I have no desire to participate ("opt-in") to a lawsuit filed pursuant to the Fair Labor Standards Act, Illinois Minimum Wage Payment Act, or the Illinois Wage Payment and Collection Act.

Form ¶¶ 6-12.

The Form ended with the declaration, "Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the above is true and correct," followed by date and signature lines for the employee.

Logan stated that he and Kearney used the Form as a "discussion model to frame the discussions" in the interviews.  Logan stated that the Form was modified "as a result of the interviews of each of the employees." Logan further stated that if any employee stated that he or she was owed money, the employee was promptly paid the amount he or she believed was owed.  Logan stated that the person was not required to sign a declaration to receive the additional compensation. Logan Declaration ¶¶ 4-8.  Logan stated that at no point was any employee threatened or coerced to sign a declaration.  Logan Declaration ¶ 14.

The Plaintiffs presented affidavits of two former employees who Logan or Kearney interviewed.[3]  Motion 96, Exhibit 1, Affidavit of Jason Smidt (Smidt Affidavit), and Exhibit 2, Affidavit of Debra S. Schoen (Schoen Affidavit).  Smidt posted ads on Craig's List for some of the Defendant entities.[4]  He later worked for Defendants Vandiver Motel and later Springfield Welcome Inn.  He also worked at the Quincy Inn, but he does not identify the Defendant entity that owned or operated the Quincy Inn. Smidt Affidavit ¶¶ 4-5.  Schoen worked for Defendant American Motels LLC and Defendant Jefferson Properties.  Schoen Affidavit ¶ 3.[5]  Kearney interviewed Smidt.  Logan interviewed Schoen.

According to Schoen, Logan called Schoen to his office for the meeting.  Schoen's direct supervisor Mary Guggenheim also attended the meeting.  Logan told her that Chad Lebow and some others filed a lawsuit claiming they were owed overtime.  Logan said some other employees he interviewed claimed that they were owed overtime and he paid them. Logan referred to the other employees as the "Mexicans."  Logan asked Schoen if she was owed overtime.  Schoen told Logan no because she was a salaried employee.  Schoen Affidavit, ¶¶ 4-15.

---

[3] The exhibits were titled affidavits, but were unsworn declarations under penalty of perjury.
[4] Smidt did not identify the specific Defendants for whom he posted ads.  He said he posted ads for "all the companies that existed at the time."  Smidt Affidavit ¶ 4.
[5] Neither Schoen nor Smidt state the dates when they worked for any Defendant.

Logan asked her to sign a paper saying that she was not owed any overtime.  According to Schoen, Logan repeatedly asked her to sign the paper and insisted that she should sign the paper.  Schoen agreed to sign. Schoen stated that Logan gave her a two-page document to sign. According to Schoen, she told Logan she wanted to read the document, but he insisted that she sign.  Schoen stated that Logan told her that he had already told her what was in the document.  Schoen said she wanted to show the document to a lawyer.  According to Schoen, Logan insisted that she sign immediately and not wait.  Schoen Affidavit, ¶¶ 16-27.  Schoen stated, "Feeling fearful for my job, and fearing that if fired I would be evicted from Defendants' Motel where I was residing, within hours or days, I finally agreed to sign."  Schoen Affidavit, ¶ 28.  Schoen stated that she understood she would have to move within three days if she was fired.  She stated, "The possibly (sic) of being forced to move with only three days' notice, was a large concern for me."  Schoen Affidavit, ¶ 30.

Schoen concluded, "I only signed based on the fear and intimidation pressed into me by Mr. Logan, combined with lack of knowledge as to what I was signing, what the claims were, what the basis of the lawsuit was." Schoen Affidavit, ¶ 34.  Logan said that Guggenheim would give Schoen a

copy of the document she signed, but she never received a copy.  Schoen Affidavit, ¶¶ 35-38.

Plaintiffs attached the Welcome Inn Employer-Employee Housing Agreement (Housing Agreement).  Motion 96, Exhibit 3, Housing Agreement.  The Housing Agreement stated that the employee had to vacate their housing at the Defendant's hotel or motel immediately when employment ended.  Housing Agreement § 3(a).

Logan disputes many of Schoen's statements about his interview of her.  According to Logan, he told Schoen she was free to participate in the interview or not.  Logan agreed that Schoen said she was not owed any additional compensation.  Logan stated he did not coerce or threaten any person he interviewed.  Logan Declaration ¶¶ 11-12, 14.  With respect to Schoen, Logan stated, "At no time did I raise the issue of her residence at any of the hotels or how her answers in the interview might affect her continued right to stay on any property of the Defendants."  Logan Declaration ¶ 13.  Logan further stated that no employee has been evicted from any of the Defendants' properties because of participating in the interviews or refusing to sign a declaration.  Logan Declaration ¶ 9.

Kearney and Smidt also disagree over the details of Smidt's interview.  According to Smidt, Kearney called Smidt to meet with him.  At

the meeting, Kearney asked if he owed Smidt any money.  Kearney explained that there was a lawsuit and he wanted to know if Smidt thought he was owed any money.  Smidt said he was owed $500.  Smidt Affidavit ¶¶ 1-11.  According to Smidt, Kearney said, "I will pay what you think you are owed, but you have to sign a document saying you will never sue." Smidt Affidavit ¶ 12.  Kearney transferred $500 to Smidt's bank account. Smidt used his smart phone to confirm the transfer.  Kearney then gave Smidt a document to sign.  According to Smidt, Kearney told him that by signing Smidt would not be able to sue him or the other Defendants in the pending lawsuit.  Smidt signed the document.  Smidt Affidavit ¶¶ 15-16. According to Smidt, Kearney told Smidt that if he tried to sue him, Smidt would get nothing and would have to pay Kearney "a lot of money."  Smidt Affidavit ¶ 18.

Kearney disputes several of Smidt's statements.  Kearney stated that he asked Smidt about any money owed to him and paid Smidt the $500.00 "before I presented a declaration to Smidt based on our interview." Kearney Declaration ¶ 8.  Kearney said he did not condition receipt of the $500 on signing the declaration.  Kearney also said that he never told Smidt that once he signed the declaration, he could not sue any of the Defendants. Kearney Declaration ¶¶ 9-10.

Kearney further said that no employee was terminated for refusing to participate in the interviews that he and Logan conducted, and no employee was terminated for refusing to sign a declaration.  Kearney said that no one threatened or coerced any employee he interviewed into signing a declaration.  <u>Kearney Declaration</u> ¶¶ 11, 14.  Kearney stated that no person was evicted because of participating in the interviews or refusing to sign a declaration. <u>Kearney Declaration</u> ¶ 13.

<u>ANALYSIS</u>

The Plaintiffs seek a protective order to stop Defendants from contacting any current or former employees who might be allowed to opt into this case if the Court allows the matter to proceed as a collective action.  The Plaintiffs further want a corrective notice sent to employees who Logan and Kearney interviewed in connection with this action (Interviewed Employees) and want Plaintiffs' counsel to be allowed to meet with all Defendants' employees at Defendants' expense.  Defendants oppose the Plaintiffs' requests.

The FLSA authorizes the District Court to allow named parties to proceed in a collective action for all similarly situated employees.  Under the FLSA, similarly situated employees may choose to participate or "opt-

in" to participate in the action.  29 U.S.C. § 216(b).  If the District Court

allows the pending Motion to Certify Class for FLSA Collective Action

(d/e 5), then the Court may approve a form of notice that will be sent to all

similarly situated employees that will explain the nature of the suit and the

available options to opt in or opt out of participation in this action.  See

Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172, (1989).  A similarly

situated employee may not waive his or her right to opt into a collective

FLSA action through private negotiations or private settlements.  Such

privately negotiated settlement or waivers would frustrate the

Congressional policy to set minimum work requirements and standards.

Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 704-09 (1945).

Both parties have the right to speak to potentially similarly situated

employees who may be given the option of participating in a collective

action.  See Gulf Oil Co. v. Bernard, 452 U.S. 89, 98-99 1981); EEOC v.

Mitsubishi Motor Mfg. of America, Inc., 102 F.3d 869, 870 (7th Cir. 1996).

The Court has the discretion to limit communications with possibly similarly

situated employees when necessary to prevent abuses such as threats,

coercion, or misrepresentations of fact.  See Williams v. Chartwell Financial

Services, Ltd., 204 F.3d 748, 759 (7th Cir. 2000).  Restrictions on

communications must be carefully drawn to "limit speech as little as

possible, consistent with the rights of the parties under the circumstances."

Gulf Oil, 452 U.S. at 102.  The Court must base any order limiting

communications on "a clear record and specific findings that reflect a

weighing of the need for a limitation and the potential interference with the

rights of the parties."  Gulf Oil, 452 U.S. at 101. The Plaintiffs have the

burden of proof on the issue.  See Jones v. National Council of Young

Men's Christian Associations of U.S., 2011 WL 1312162 (N.D. Ill. March

31, 2011) (quoting Gulf Oil, 452 U.S. at 102).

       In this case, the Court finds that the record clearly shows that the

Form is misleading and requires a corrective notice be sent to Interviewed

Employees.  Specifically, Paragraph 12 of the Form states, "I have no

desire to participate ("opt-in") to a lawsuit filed pursuant to the Fair Labor

Standards Act, Illinois Minimum Wage Payment Act, or the Illinois Wage

Payment and Collection Act."  An employee could reasonably understand

this paragraph to constitute a binding decision or commitment to opt-out of

participation in this action (should the District Court allow the action to

proceed as a collective action).  The paragraph states that the employee

does not want to opt-in to this action.  An employee who signed the Form

adopted this statement under penalty of perjury.  Such an employee could

reasonably believe that he or she made a binding commitment not to opt-in

once he or she signed the Form.  As such, the Form is misleading.  A party cannot waive his or her right to opt into a collective action under the FLSA privately.  Brooklyn Savings Bank, 324 U.S. at 704-09.

The Court recognizes that the Form does not expressly state that the employee is waiving the right to opt-in.  The Court also recognizes that similarly situated employees further may express their current interests in joining an FLSA collective action without waiving the right later to choose to opt-in.  The pre-printed Form, however, presumed that the employee had no interest in opting in to a collective action.  Asking employees to sign such a preprinted form under penalty of perjury was misleading for the reasons stated above.

The Court hereby directs that Plaintiffs are to send a court-approved corrective notice (Notice) to each Interviewed Employee to correct the misleading nature of paragraph 12 in the Form.  The Notice will not refer to the Court in order to allow the Court to maintain neutrality.  See Woods v. New York Life Ins. Co., 686 F.2d 578, at 581 (7th Cir. 1982).  The Notice shall not be printed under a letterhead to avoid associating the Notice with one party.  The Notice shall state the following:

<u>Notice to Current and Former Employees of [Insert Name of</u>

<u>Recipient's Employer]</u>

As you may know, your employer [insert name of employer of the recipient] is a defendant is a lawsuit pending in the U.S. District Court for the Central District of Illinois entitled <u>Brashier v. Quincy Property, LLC</u>, et al., Case No. 3:17-cv-3022-SME-TSH (referred to below as "the Lawsuit"). The Plaintiffs in the Lawsuit allege that they are entitled to unpaid overtime compensation for work performed for the Defendants, including your employer. The Defendants deny any wrongdoing and specifically deny that they owe any overtime to the Plaintiffs.

The Plaintiffs have asked the Court to permit the Lawsuit to proceed as a collective action. In a collective action, other similarly situated employees may choose to participate in the Lawsuit and allow the named Plaintiffs to proceed on their behalf as well.

The Court has not yet decided whether the Lawsuit should proceed as a collective action.

If the Court allows the Lawsuit to proceed as a collective action, you will receive another notice. That notice will explain the Lawsuit in greater detail and ask you to choose whether you want to participate in the action and allow the named Plaintiffs to proceed on your behalf as well as their own (opt-in) or not participate (not opt-in or opt-out). In that event, that notice will give you the opportunity to opt-in or not opt-in to the Lawsuit.

[Insert name of person who interviewed the recipient] interviewed you after the Lawsuit was filed. He asked you whether [insert Name of Employer] owed you any overtime or other payments and asked you to sign a document called a Declaration. The Declaration may have stated you had no interest in opting into the Lawsuit.

We are sending this notice to you to make sure that you understand that, by signing a Declaration, you did not give up your rights in the future to choose whether to opt-in or opt-out of the Lawsuit.

If the Court decides that the Lawsuit should proceed as a collective action, you will receive a notice that offers you the option to opt-in or opt-out of participating in the Lawsuit. In that event, you will still have the right to opt-in or opt-out regardless of whether you signed or did not sign a Declaration.

The signatures of the attorneys for the Plaintiffs and Defendants shall appear at the bottom of the Notice.

Plaintiffs shall submit a proposed Notice to the Court for approval, with a copy to Defendants, before sending the notice. Once approved by the Court, Plaintiffs shall send the Notice by first class mail to the Interviewed Employees. Defendants are to provide Plaintiffs with the names and addresses of the Interviewed Employees.

The Court recognizes that several of the Defendants have moved to dismiss this case for lack of personal jurisdiction, and all of the Defendants have moved to transfer venue (d/e 98, 100, 102). These motions put at issue whether this Court has jurisdiction over them. Defendants Quincy Property, LLC, Brett Burge, Logan, and Kearney, however, have answered the Third Amended Complaint. Defendants', Quincy Property, LLC, Brett Burge, Kenneth Logan, and

Quentin Kearney, Answer to Plaintiffs' Third Amended Complaint d/e
104).  The three Defendants, at least, have submitted to the
jurisdiction of the Court.  They shall insure that the names and
addresses of the Interviewed Employees are provided to the
Plaintiffs.

The Court will assess the costs to send this notice to the
Interviewed Employees after ruling on the pending Motions seeking
dismissal for lack of personal jurisdiction or transfer of venue of this
action.  The jurisdictional issue must be resolved first because the
Court cannot assess costs over a party if it lacks jurisdiction.  The
Court will not delay sending the notice because Defendants Quincy
Property, LLC, Burge, Logan, and Kearney have answered.  The
case, therefore, will proceed at least against these Defendants.

The evidence also supports the conclusion that at least some
Interviewed Employees sensed an element of undue pressure in the
interviews.  To some extent, an element of pressure inherently exists when
a supervisor interviews a subordinate employee.  The declarations and
affidavits of Logan, Kearney, Schoen, and Smidt show that at least these
employees felt some undue pressure.  Furthermore, the Form presented to
the employees contained the misleading statement in paragraph 12.

Asking the employee to sign the Form with the misleading statement created additional undue pressure.  The Defendants asked Interviewed Employees who may have been interested in opting into this action to sign declarations that they were not interested in opting into this action.  Such Interviewed Employees either had to cross out the paragraph, decline to sign, or lie and sign as is.  An Interviewed Employee could feel significant pressure to sign the document as is.  The record demonstrates that additional prophylactic measures are needed in future employee interviews conducted by the Defendants.

The Defendants shall make prophylactic disclosures at the beginning of any interviews with employees or former employees regarding this action.  The prophylactic statements will reduce the chance of coercion without significantly affecting the Defendants' rights to communicate with possibly similarly situated employees.  The Court finds that the preliminary disclosures set forth in Camilotes v. Resurrection Health Care Corp., 2012 WL 245202, at *2 (N.D. Ill. Jan. 25, 2012), provide the type of prophylactic disclosures that will reduce the risk of coercion in subsequent interviews in this case.  The following prophylactic disclosures are based on those in the Camilotes case.  The disclosures will be sufficient to protect employees in subsequent interviews by the Defendants.

[If person interviewed does not know the person conducting the interview: My name is [ ] and I am [identify relationship with the action]. Former employees have sued [insert Name of Employer] claiming that they were owed compensation for unpaid overtime and improper deductions from their wages or salaries.  These former employees are seeking to bring their claims on behalf of certain current and former employees who worked under similar conditions, which includes you.

To help [insert Name of Employer] in defending this case, I'd like to ask you some questions.

Before we begin, have you been contacted by any lawyer about this case? **[If so, did you agree to be represented by counsel?] [Note—if they talked to counsel and are represented by counsel, END the conversation.] [DO NOT ASK WHAT THEY SPOKE ABOUT]**

Please understand that you do not have to speak with me or answer any of my questions about matters related to this lawsuit. You can leave right now if you wish. Also, at any time while we are talking, you can stop the interview and leave. Your participation is completely voluntary.

Also, please understand that your job will not be affected in any way because you decide to talk with me, or not to talk with me. [insert Name of Employer] will not give you any benefits or take any action against you. [insert Name of Employer] will not do anything to affect your job, either favorably or unfavorably, because of any answers you give to my questions.

Do you understand what I have just explained? Do you have any questions about what I have just told you? Is it all right with you if we go ahead with the interview?

If the employee states that he or she understands the disclosures and agrees to go ahead with the interview, then the Defendants' representative may proceed with the interview.

Finally, the Defendants shall not present an employee for signature a preprinted form declaration, affidavit, or other similar document (sworn or unsworn) which purports to be a statement of fact on personal knowledge. If the employee consents to an interview, the Defendants may conduct interviews and prepare an individualized document summarizing or memorializing the content of the employee's statements at the interview. The Defendants may ask the employee to sign such a document. If the Defendants elect to do so, the Defendants must provide a copy of the proposed statement to the employee to review. The Defendants must allow each such employee sufficient time to read the document completely and carefully. The Defendants must tell the employee that signing a statement is voluntary and refusing to sign will not affect his or her employment in any respect. The Defendant must then give the employee 24 hours to decide whether to sign. The Defendants are not required to let the employee keep a copy of the document during the 24-hour period. If the employee signs the statement, the Defendant must give the employee a copy of the signed document.

Defendants argue that the court should not enter a protective order. Defendants argue that they properly exercised their right to speak to employees about this action. They request an opportunity to conduct discovery and an evidentiary hearing. The Court will not grant this request. The submissions of the parties give the Court ample information to determine the appropriate ruling.

Defendants liken their activities to the employer in the <u>Camilotes</u> case. There are similarities, but also important differences. The interviewers in <u>Camilotes</u> read clear written disclosures to the employees at the beginning of the interviews. The interviewers also prepared individualized declarations that the employees could elect to sign. The <u>Camilotes</u> interviewers did not hand employees a preprinted declaration to sign that stated that the employee had no interest in the action. The interviewers also did not ask the employees to sign the declaration immediately at the interview. The employer's representative contacted the employee later, sometimes more than a month later when they asked the employee to read the declaration and sign. <u>See</u> <u>Camilotes</u>, 2012 WL 245202, at *2-*3. The process was much less rushed and the employer did not hand the employee a preprinted form that said what the employer wanted to hear.

The Defendants' Form paragraph 12 was misleading and the interview techniques involved the use of undue pressure.  The relief ordered, therefore, is appropriate in this case.  Defendants other arguments to the contrary are not persuasive.

Plaintiffs ask the Court to grant additional remedies.  Plaintiffs argue that Defendants coerced Interviewed Employees with threats of eviction if they did not sign the Form.  Plaintiffs have failed to prove that Logan, Kearney, or any other representative of the Defendants threatened anyone with eviction.  Schoen stated that she worried about being evicted, but she did not state that Logan mentioned her housing or threatened any possible eviction.  Schoen's subjective fear does not prove that Defendants used the threat of eviction to coerce signatures on the Form.  The Court will not modify the corrective measures set forth in this Opinion based on Schoen's subjective fears.

Plaintiffs ask the Court to order Defendants to stop communicating with current, former, and future employees about this action.  Such an absolute restraint on Defendants' rights is not appropriate.  The Defendants have a right to talk to employees.  The affidavits before the Court show some risk of coercion, and paragraph 12 of the Form is misleading for the reasons set forth above.  The corrective notice, the disclaimers, and the

prohibition against preprinted form declarations and similar documents is a sufficient remedy in this case.

Plaintiffs ask the Court to enter a finding that waivers and settlements are void.  Private settlements of FLSA claims are void. Brooklyn Savings Bank, 324 U.S. at 704-09.  The law is settled.  The Form declarations do not contain express settlements or waivers so nothing needs to be declared void.  The corrective notice will dispel misconceptions that Interviewed Employees might have after the Defendants' interviews.  Additional findings are not necessary.

Plaintiffs ask for copies of the signed Declarations.  Defendants state that they have provided such copies to Plaintiffs.  This request is therefore moot.

Plaintiffs ask for face-to-face meetings between their counsel and all of Defendants' current employees at Defendants' cost.  The Court will not grant this relief.  Again, the relief provided is sufficient under the circumstances.

Plaintiffs ask the Court to award Plaintiffs their costs and fees for bringing this Motion.  Awarding fees and costs for protective orders are governed by Rule 37(a)(5).  Fed. R. Civ. P. 26(c)(3), 37(a)(5).  If the Court grants part of the relief sought in a motion for protective order, the Court

has the discretion to apportion reasonable expenses for the Motion.  Fed.

R. Civ. P. 35(a)(5)(C).  In this case, the Court in its discretion will not order

Defendants to pay Plaintiffs' fees and costs.  The Court in its discretion will

not award Plaintiffs fees and costs for bringing Motion 96.

THEREFORE, IT IS ORDERED that Plaintiffs' Motion for Protective

Order (d/e 96) (Motion 96) is ALLOWED in part and DENIED in part.  The

Plaintiffs shall file a proposed corrective notice in the form set forth in this

Opinion and provide a copy to all Defendants by October 10, 2017.  The

Defendants shall provide Plaintiffs' counsel the names and mailing

addresses of all Interviewed Employees (as that term is defined in this

Opinion) by October 10, 2017.  The Court will review the proposed

corrective notice and, upon approval of a final corrective notice, authorize

its distribution by separate order.  The Court will assess the costs of the

production and distribution of the protective order after the pending motions

to dismiss and to transfer venue (d/e 98, 100, 102) are resolved.

Defendants shall provide the disclosures set forth in this Opinion in any

subsequent interviews of current or former employees regarding this case.

Defendants shall not present to current or former employees, for signature,

any preprinted form that purports to be declarations, affidavits or

statements of fact (sworn or unsworn) based on personal knowledge as

discussed in this Opinion.  The Motion is otherwise denied.

ENTER:   September 29, 2017

_s/ Tom Schanzle-Haskins_
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE